**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Timothy Ruggiero, on behalf of
himself and all others similarly situated,

      Plaintiff,                        CASE NO.:

v.

SANTA FE NATURAL TOBACCO
COMPANY, INC., and REYNOLDS
AMERICAN INC.,

      Defendants.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Timothy Ruggiero ("**Plaintiff**"), individually and on behalf of all others similarly situated, by and through the undersigned counsel, files this Class Action Complaint, and alleges against Defendants, Santa Fe Natural Tobacco Company, Inc. ("**Santa Fe**") and Reynolds American Inc. ("**Reynolds American**") (collectively, "**Defendants**") as follows:

## NATURE OF ACTION

1.      Defendants manufacture, market, and sell Natural American Spirit cigarettes. Defendants' product labeling, advertising and website describe these cigarettes as "Natural," "Additive Free," "100% Additive Free," "Organic," and an "unadulterated tobacco product." These terms are intended to suggest that Natural American Spirit cigarettes are healthier, safer, and present a lower risk of tobacco-related disease than other tobacco products. Defendants, however, have no competent or reliable scientific evidence to back their labeling and advertising claims. Defendants' claims are patently deceptive, especially in today's market, where these terms have a potent meaning for the health-and environmentally-conscious consumer. Moreover,

as the U.S. Food and Drug Administration ("**FDA**") recently determined, Natural American Spirit cigarettes are in fact "adulterated." Using these deceptive terms, Defendants are able to successfully price Natural American Spirit cigarettes higher than other competitive cigarette brands.

2.      Plaintiff and the Class have been deceived by Defendants' advertising, labeling and other statements characterizing the cigarettes as "100% additive-free," "natural" and/or "organic." In fact, these cigarettes were not less harmful, healthier or less carcinogenic.  Rather, they were at least as dangerous and harmful as regular cigarettes, and Defendants were aware of this. But for Defendants' false and deceptive advertising, marketing and labeling of Natural American Spirit cigarettes, Plaintiff and members of the Class would not have purchased or would not have paid a premium price of the Natural American Spirit cigarettes.  Individually and on behalf of all those similarly situated, Plaintiff seeks redress for Defendants' misleading and deceptive trade practices.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff is a citizen of Maryland, Defendants are citizens of New Mexico and North Carolina, there are currently 100 or more class members, and the aggregate amount in controversy will exceed $5,000,000.

4.      The Court has personal jurisdiction over all Defendants because they are authorized to do business and in fact do business in this District and have sufficient minimum contacts with this District, and each Defendant otherwise intentionally avails itself of the markets in this District through the promotion, marketing and sale of Natural American Spirit cigarettes to render the exercise of jurisdiction by this Court permissible.

5.     Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District, the claim that is the subject of this action is situated in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## PARTIES

6.     Plaintiff Timothy Ruggiero ("**Plaintiff**," "**Plaintiff Ruggiero**" or "**Maryland Plaintiff**") is a citizen of Maryland, residing in Frederick County, Maryland. Plaintiff Ruggiero purchased Natural American Spirit cigarettes during the Class Period and has smoked American Spirit Cigarettes exclusively since approximately 2011. Plaintiff Ruggiero switched to Natural American Spirit cigarettes specifically because of Defendants' advertising and other statements stating or implying that Natural American Spirit cigarettes are "Natural," "Additive Free," "100% Additive Free," and "Organic,", which, to him, meant that Natural American Spirit cigarettes are safer, healthier and less carcinogenic than other cigarette brands. Plaintiff Ruggiero incurred losses and damages as a result of the activities alleged herein. Plaintiff Ruggiero has suffered injury-in-fact for which he is entitled to seek monetary damages.

7.     Defendant Santa Fe Natural Tobacco Company, Inc. is a New Mexico corporation. Its principal place of business is One Plaza La Prensa, Santa Fe, New Mexico 87507. Santa Fe manufactures, promotes and sells Natural American Spirit cigarettes. Santa Fe, a subsidiary of Reynolds American Inc., has been and still is engaged in the business of manufacturing, promoting and selling Natural American Spirit cigarettes throughout the United States.

8.      Defendant Reynolds American Inc. is a North Carolina corporation. Its principal place of business is 401 North Main Street, Winston-Salem, North Carolina 27101. Santa Fe Natural Tobacco Company, Inc. is a wholly owned subsidiary of Reynolds American. Reynolds American is severally, jointly, and vicariously liable for the actions of Santa Fe.

## FACTUAL ALLEGATIONS

### A.  The Natural American Spirit Cigarette

9.      According to Reynolds American, Defendants manufacture the "fastest growing super-premium cigarette brand[:]"[1] Santa Fe.

10.      Santa Fe, created in 1982, holds itself out as a "natural tobacco" company.

11.      Santa Fe's first product was loose tobacco, which were called "The Original American Spirit" cigarette.[2]

12.      When describing the company's creation, a founding member remarked, "The initial proposal was to produce a natural tobacco product, an unadulterated tobacco product."[3]

13.      Defendants advertise and label its cigarettes as "100% natural."

14.      Defendants boast that "no other cigarette company has positioned itself as 100% natural."

15.      Defendants also represent that its cigarettes are "Natural," "Additive Free," and "Organic."

---

[1] http://www.sec.gov/Archives/edgar/data/1275283/000119312513050521/d449654d10k.htm (last visited March 10, 2016).
[2] https://www.sfntc.com/site/ourCompany/ sfntc -story/ (last visited March 10, 2016).
[3] https://www. sfntc.com/site/ourCompany/ sfntc -story/ (last visited March 10, 2016).



16.    Defendants' product development and marketing scheme targets smokers inclined to buy natural, organic products in the belief that such products are healthier or more environmentally responsible. Defendants exploit these consumer attitudes in various ways. One American Spirit advertisement, for example, reads:

> We make our cigarettes with 100 percent additive-free tobacco, including styles with 100 percent U.S. grown tobacco, and with certified organic tobacco. Our blenders create the highest quality tobacco blends and only use two ingredients: whole leaf tobacco and water.[4]

---

[4] https://www.sfntc.com/site/ourProduct/overview/ (last visited March 10, 2016).



As another example, Defendants sent a direct mailing advertisement depicting a rain drop over a tobacco leaf that read:

> "TOBACCO + WATER THAT'S ALL[,] For over 30 years we've created premium, whole leaf, <u>100% additive-free</u> natural tobacco products using only what the earth has given us."

Defendants also include in their advertisement alleged smoker testimonials such as: "I only purchase organic products at the grocery store and obviously I would only smoke a cigarette made with organic tobacco."

17.     As a result of this misleading and deceptive marketing campaign, Natural American Spirit sales increased by 86 percent from 2009 to 2014, as compared to an overall 17 percent decline in cigarette sales in the United States over the same time period.

18.     Natural American Spirit cigarettes have become one of the top 10 best-selling cigarette brands even though it is priced higher than most other competitive brands.

**B. Defendants' Misleading and Deceptive Advertising**

19.     Natural American Spirit cigarettes consumers, like Plaintiff, expect that the cigarette is healthier, less harmful or less carcinogenic than other cigarettes. These consumers associate Defendants' advertising terms such as "natural," "organic," and "additive free" with reduced risk.

20.     Tobacco company studies confirm these consumer associations. For example, when asked the implication of a natural cigarette compared to one with additives, focus group members thought that the absence of artificial additives assured a lower health hazard and longevity. In a 1983 study, participants described chemicals as undesirable or "not good for you." A 1996 study viewed natural as purer. A 1998 study found that natural meant less harmful.

21.     Defendants deceptively exploit their insistent marketing message of a safer cigarette in other ways. They sell American Spirit cigarettes in health food stores; and Defendants accompany their cigarettes with literature from "America's leading natural foods teacher" who claims that the cigarettes are medicinal and that Native Americans smoke such additive free cigarettes without developing cancer.

22.     Defendants' intensive and successful advertising of Natural American Spirit cigarettes as "natural," "organic," "wholesome" and/or "additive-free" is overwhelming. The consuming public precisely thinks: "natural" and "organic" cigarettes are healthier and safer or

less carcinogenic than cigarettes containing chemicals. In a 1997 interview, Natural American Spirit cigarettes smokers thought that Defendants "care[] more about its customers" than other cigarette companies.

23.     Defendants' claims that Natural American Spirit cigarettes are natural and "100% Additive Free" are deceptive and misleading. First, Defendants add menthol and other flavors to its cigarettes. Menthol and flavoring agents are "additives." Mentholated cigarettes are particularly insidious because they make people more likely to start smoking, lead to greater nicotine dependence, and decrease the rate of quitting.

24.     Second, a recent scientific study demonstrates that Natural American Spirit cigarettes are far more toxic and carcinogenic than other cigarettes.[5] Scientists from the Center for Tobacco Products and the Tobacco and Volatiles Branch of the Centers for Disease Control and Prevention examined polycyclic aromatic hydrocarbons (PAHs), a class of carcinogenic compounds in cigarette smoke. PAHs do not naturally occur in the tobacco plant; rather, they are formed during the smoking process. Of the 50 mainstream U.S. cigarettes tested, the American Spirit Blue cigarette had the highest total PAH yields. It delivered from 60% to 170% higher PAH yields that the average PAH yields of all cigarettes analyzed. This is because American Spirit Blues, and, upon information and belief, Natural American Spirit cigarettes in general, have the highest tobacco mass. It has 216 mg more mass that the average tobacco mass of 49 other cigarettes. While consumers, such as Plaintiff and the Class, smoke Natural American Spirit cigarettes because they think those cigarettes are less carcinogenic, the opposite is true – they are more carcinogenic.

---

[5] Vu, A, T., Taylor, Kenneth, M., et al. Polycyclic Aromatic Hydrocarbons in the Mainstream Smoke of Popular U.S. Cigarettes. Chemical Research in Toxicology, 2015, 28:1616-26.

25.     Natural American Spirit cigarettes also contain the highest levels of freebase nicotine. The more freebase nicotine, the more addictive the cigarette. American Spirits' freebase nicotine levels are at 36 percent, compared to Camel's 2.7 percent, Winston's 6.2 percent, and Marlboro's 9.6 percent.[6] While consumers, such as Plaintiff and the Class, smoke Natural American Spirit cigarettes as an alternative to quitting or because they think Natural American Spirit cigarettes will actually help them quit, the opposite is true—they are smoking a more addictive cigarette.

26.     What's more, Plaintiff and the Class paid a premium price for American Spirits, which they believed were safer and less carcinogenic than other cigarettes. Defendants' public financial statements boast that they purposefully price Natural American Spirit cigarettes higher than other brands.

### C.  The Food and Drug Administration's Warning Letter

27.     On August 27, 2015, the Center for Tobacco Products of the U.S. Food and Drug Administration issued a warning letter to Defendants.[7]

28.     The FDA warned Santa Fe that advertising its products as "natural" and "additive-free" is in violation of federal law because the labeling "represents explicitly and/or implicitly that the products or their smoke do not contain or are free of a substance and/or that the products present a lower risk of tobacco-related disease or are less harmful than one or more other commercially marketed tobacco products."

---

[6] Pankow, J., Barsanti, K., & Peyton, D. (2003) Fraction of Free-Base Nicotine in Fresh Smoke Particulate Matter from the Eclipse "Cigarette" by 1H NMR Spectroscopy. Chemical Research in Toxicology, 16(1): 23-27.

[7] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm459778.htm

29.    The FDA found that Natural American Spirit cigarettes are adulterated "because they are modified risk tobacco products sold or distributed without an FDA order in effect that permits such sale or distribution."

30.    Specifically, the FDA stated that: "Natural American Spirit cigarettes, which uses the descriptors 'Natural' and 'Additive Free,' represents explicitly and/or implicitly that the products or their smoke do not contain or are free of a substance and/or that the products present a lower risk of tobacco-related disease or are less harmful than one or more other commercially marketed tobacco products. As such, these products are modified risk tobacco products. Because these products are sold or distributed to customers in the United States without an appropriate FDA order in effect under section 911(g) of the FD&C Act (21 U.S.C. § 387k(g)), these products are adulterated under section 902(8) of the FD&C Act (21 U.S.C. § 387b(8) )."

31.    The FDA's letter demonstrates that Defendants' marketing, advertising and labeling that Natural American Spirit cigarettes are "natural" and "additive-free" falsely and misleadingly conveys to consumers that the cigarettes are healthier or less harmful than other cigarettes.  The FDA found Natural American Spirit cigarettes to be a "modified risk tobacco product," which is defined as "any tobacco product that is sold or distributed for use *to reduce harm or the risk of tobacco-related disease associated with commercially marketed tobacco products*." 21 U.S.C.A. § 387k(b)(1) (emphasis added).

32.    Defendants' manufacture and sale of adulterated tobacco products and unapproved modified risk tobacco products are expressly prohibited by law and Defendants' actions are an ongoing deceptive trade practice.

**D. Defendants Consciously or Recklessly Disregarded the Rights and Safety of Consumers**

33.     Defendants know and have known that their advertising, marketing, labeling and packaging of Natural American Spirit cigarettes is deceptive and misleading.

34.     Defendants have knowingly and intentionally misled consumers to believe that Natural American Spirit cigarettes are healthier or less harmful than other cigarettes, even though there is no research or evidence supporting these claims and even though they possess knowledge that Natural American Spirit cigarettes contain additives and are not natural.

35.     Defendants have continued their advertising and marketing practices to consumers, including Plaintiff and the Class, without disclosing the truth of their deceptive trade practices.

## CLASS ACTION ALLEGATIONS

36.     Pursuant to Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following class and subclass (collectively the "**Classes**") initially defined as:

> **The Nationwide Class**
> All persons in the United States who purchased Natural American Spirit cigarettes for personal consumption from the first date Santa Fe Natural Tobacco Company placed its Natural American Spirit cigarettes into the stream of commerce through at least August 27, 2015. Collectively, all these persons will be referred to as "Plaintiffs" or "Plaintiffs Class."

> **The Maryland Subclass**
> All persons in the state of Maryland who purchased Natural American Spirit cigarettes for personal consumption from the first date Santa Fe Natural Tobacco Company placed its Natural American Spirit cigarettes into the stream of commerce through at least August 27, 2015.

37.     Excluded from the Classes are: Defendants and any entity or entities in which Defendants have a controlling interest; any entity or entities in which Defendants' officers,

directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants; the Judge to whom this case is assigned and any member of the Judge's court staff; all persons that properly execute and timely file a request for exclusion from the Classes.

38.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be divided into additional subclasses or modified in any other way.

39.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

40.     The action satisfies the <u>numerosity</u>, <u>commonality</u>, <u>typicality</u>, <u>adequacy</u>, <u>predominance</u>, and <u>superiority</u> requirements of the Federal Rules of Civil Procedure Rule 23(a)(1- 4) and (b)(1).

41.     <u>Numerosity</u>—the Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the Class members is presently unknown to Plaintiff, but it is believed that Class members number at least in the thousands. The identity of Class members is ascertainable. Class members may be informed of the pendency of this Class action by a combination of direct mail and public notice, or other means.

42.     <u>Commonality and Predominance</u>—Common questions of fact and law exist as to all members of the Class, which predominate over questions affecting only individual members of the Class. State specific consumer protection and deceptive trade practices law should apply

among the citizens of different states, respectively. These include, but are not limited to the following:

a.      Whether Defendants engaged in unfair or deceptive or unconscionable  business practices alleged herein;

b.      Whether Defendants made deceptive and misleading representations or material omissions with respect to Natural American Spirit cigarettes;

c.      Whether Defendants represented that Natural American Spirit cigarettes have characteristics, uses, benefits or qualities that they do not have;

d.      Whether Defendants' unfair and deceptive practices harmed Plaintiff and the Class;

e.      Whether Plaintiff and the Class have been damaged by the unlawful actions of the Defendants and the amount of damages to the Class;

f.      Whether Defendants were unjustly enriched by its deceptive practices;

g.      Whether Court-supervised medical monitoring is appropriate under the circumstances, including equitably mandating Defendants create and/or pay the costs of smoking cessation programs;

43.      <u>Typicality</u>—Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff purchased Natural American Spirit cigarettes that Defendants' deceptively promoted, sold and distributed. Plaintiff is asserting the same rights, making the same claims, and seeking the same relief for themselves and for all other class members. Defendants' unfair and/or deceptive actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and each Class Member sustained similar injuries arising out of Defendants' conduct.

44.     The injuries of each Class member were caused directly by Defendants' wrongful conduct. The factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of each member of the Class and are based on the same legal theories.

45.     Adequacy—Plaintiff is an adequate representative of the Class because Plaintiff is a Class member and Plaintiff's interests do not conflict with the interests of the members of the Class that Plaintiff seeks to represent. Plaintiff is represented by experienced and able counsel who have successfully litigated numerous consumer class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and Plaintiff's counsel can fairly and adequately protect the interests of the members of the Plaintiffs Class.

46.     Superiority—The class action is the best available method for the efficient adjudication of this litigation because individual litigation of the Class claims would be impractical and individual litigation would be unduly burdensome to the courts. Individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. As the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will

conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

## CLAIMS FOR RELIEF

**A.  Claims Brought on Behalf of the Nationwide Class and all Subclasses**

## COUNT I

### UNJUST ENRICHMENT
### (By Plaintiff and the Nationwide Class)

47.     Plaintiff realleges and incorporates by reference paragraphs 1-46 above as if fully set forth herein.

48.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and all Subclasses against Defendants.

49.     Plaintiff and the Nationwide Class members conferred a benefit on Defendants by purchasing Natural American Spirit cigarettes.

50.     Defendants have unjustly retained a benefit to the detriment of Plaintiff and members of the Nationwide Class.  Defendants misrepresented and deceived Plaintiff and members of the Nationwide Class regarding the facts concerning additives in Natural American Spirit cigarettes.  Defendants did so for the purpose of enriching themselves.  Plaintiff and Class members would not have purchased Natural American Spirit cigarettes or would not have paid as much for the cigarettes had they known the true facts.  Thus, Defendants continue to possess money paid by Plaintiff and the Nationwide Class to which they are not entitled.

51.     Defendants' retention of the benefit violates fundamental principles of justice, equity and good conscience.

52.     As a result of Defendants' unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiff and the Class.

53.     As a direct and proximate result of Defendants' above-described conduct, Plaintiff and the Nationwide Class members have sustained damages.

## COUNT II

### INJUNCTIVE RELIEF—MEDICAL MONITORING & SMOKING CESSATION CLINICS
### (By Plaintiff and the Nationwide Class)

54.     Plaintiff realleges and incorporates by reference paragraphs 1-46 above as if fully set forth herein.

55.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and all Subclasses against Defendants.

56.     As alleged above, Defendants deceived Plaintiff and the Class into thinking that Natural American Spirit cigarettes are healthier, safer and less carcinogenic than alternative cigarettes.

57.     Defendants exposed consumers, including Plaintiff and the Class to a product that is addictive and disease causing.

58.     Plaintiff and Class members switched to smoking Natural American Spirit cigarettes because they thought that a "Natural," "Organic," and "Additive Free" cigarette, as Defendants deceptively advertises, would help them quit smoking or was a healthy alternative to cigarettes.

59.     Smoking an addictive and potentially disease-causing product makes medical examinations and smoking cessation programs reasonable and necessary.

60.     The extent of the significantly increased risk and the catastrophic nature of the illnesses to which Defendants have exposed Plaintiff and the Nationwide Class require such

medical monitoring program and/or smoking cessation programs for Plaintiff and the Nationwide Class.

61.     Plaintiff, on behalf of himself and similarly situated Nationwide Class members, invokes the equitable and injunctive power of the Court to require Defendants to fund a Court-supervised medical monitoring and smoking cessation programs because of the significantly increased risks of injury attributable to smoking American Spirits.

62.     Such relief is available notwithstanding the absence of the manifestations of a present physical injury or symptomatic disease.

63.     Failure to establish a medical monitoring and smoking cessation programs will result in the infliction of immeasurable and unconscionable personal injuries which are preventable.

**B.  Claims Brought on Behalf of the Maryland Subclass**

**COUNT IV**

**Violation of the Maryland Consumer Protection Act**
**Md. Code Ann., Com. Law §§ 13-101 *et seq*.**
**(By the Maryland Plaintiff and the Maryland Subclass)**

64.     Plaintiff realleges and incorporates by reference paragraphs 1-46 above as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the members of the Maryland Subclass against Defendants.

66.     The Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq*. (the "MCPA") prohibits unfair or deceptive trade practices.

67.     The MCPA prohibits "unfair or deceptive trade practices" including:

a.  "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (Md. Code Ann., Com. Law § 13-301(1));

b.  "[r]epresentation that: Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" (Md. Code Ann., Com. Law § 13-301(2)(i));

c.  "[r]epresentation that:  .  .  . Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" (Md. Code Ann., Com. Law § 13-301(2)(iv));

d.  "[f]ailure to state a material fact if the failure deceives or tends to deceive" (Md. Code Ann., Com. Law § 13-301(3));

e.  "Advertisement or offer of consumer goods, consumer realty, or consumer services: Without intent to sell, lease, or rent them as advertised or offered" (Md. Code Ann., Com. Law § 13-301(5)(i)); and

f.  "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: The promotion or sale of any consumer goods, consumer realty, or consumer service" (Md. Code Ann., Com. Law § 13-301(9)(i).

68.  Defendants are "merchants" as defined in Md. Code Ann., Com. Law § 13-101(g).

69.     Natural American Spirit cigarettes are "consumer goods" as defined in Md. Code Ann., Com. Law § 13-101(d).

70.     Defendants are engaged in the "sale" of Natural American Spirit cigarettes as defined in Md. Code Ann., Com. Law § 13-101(i).

71.     Plaintiff and the Maryland Subclass are "consumers" as defined in Md. Code Ann., Com. Law § 13-101(c).

72.     As alleged above, Defendants made numerous representations concerning the benefits and characteristics of Natural American Spirit cigarettes that were misleading.

73.     In purchasing Natural American Spirit cigarettes, Plaintiff and the Maryland Subclass members were deceived by Defendants' failure to disclose that Natural American Spirit cigarettes are not natural and contain additives despite being advertised as "Natural" and "100% Additive-Free."

74.     Defendants' unfair and deceptive practices are likely to mislead—and have misled—reasonable consumers, such as Plaintiff and members of the Class.

75.     Specifically, Defendants have represented that Natural American Spirit cigarettes are "Additive Free," "100% Additive Free," "Natural" and "Organic," when in fact, the cigarettes are engineered to deliver a higher level of nicotine, and/or contain additives and flavorings.

76.     Plaintiff and the Maryland Subclass have been aggrieved by Defendants' unfair deceptive and unconscionable practices in violation of the MCPA, in that they purchased and consumed Defendants' deceptive product.

77. Defendants have deceived reasonable consumers, like Plaintiff and the Class, into believing Natural American Spirit cigarettes were something they were not: healthier and safer than other cigarettes.

78. Defendants violated and continue to violate the MCPA in the following practices proscribed by the MCPA in transactions with the Plaintiff and the Maryland Subclass which were intended to result in, and did result in, the sale of the products:

a. Md. Code Ann., Com. Law § 13-301(1): making false, or misleading written statements, visual descriptions, and other representations that have the capacity, tendency, or effect of deceiving or misleading consumers;

b. Md. Code Ann., Com. Law § 13-301(2)(i): Representing that goods have a characteristic, ingredient, use, benefit, or quantity that they do not have;

c. Md. Code Ann., Com. Law § 13-301(2)(iv): Representing that goods are of a particular standard or quality that they are not;

d. Md. Code Ann., Com. Law § 13-301(3): Failing to state a material fact and the failure deceives or tends to deceive;

e. Md. Code Ann., Com. Law § 13-301(5)(i): Advertising goods with intent not to sell them as advertised; and

f. Md. Code Ann., Com. Law § 13-301(9)(i): engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods.

79.     Plaintiff and the Maryland Subclass members have suffered injury in fact and actual damages resulting from Defendants' material omissions and misrepresentations because they paid an inflated purchase price for Natural American Spirit cigarettes.

80.     Defendants knew, should have known, or were reckless in concealing the truth that Natural American Spirit cigarettes were not Additive-Free for their intended use.

81.     The facts concealed and omitted by Defendants to Plaintiff and the other Maryland Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or Natural American Spirit cigarettes or pay a lower price. Had Plaintiff and the other Maryland Subclass members known about the defective nature of Natural American Spirit cigarettes they would not have purchased Natural American Spirit cigarettes or would not have paid the prices they paid in fact.

82.     The Maryland Plaintiff and other members of the Maryland Subclass reasonably relied upon the Defendants' representations as to the quality and attributes of the products.

83.     The Maryland Plaintiff and other members of the Maryland Subclass were likely to be deceived by Defendants' representations about the quality and attributes of their products, including but not limited to the purported uses, benefits and characteristics of their products, taken as a whole, as described herein. The Maryland Plaintiff and other Maryland Subclass members would not have purchased the products or would not have paid a premium for the products had they known the Defendants' claims were untrue, and had they known the true nature of the products.

84.     Pursuant to Maryland Commercial Law Code § 13-408, Plaintiff and the Maryland Subclass seek damages, attorney's fees and costs and any other equitable and legal relief to which they may be entitled.

**WHEREFORE**, Plaintiff, on behalf of himself individually, and on behalf of all Class members, seeks the following relief against all Defendants:

A.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3) and (c)(4), establishing an appropriate Class and any Subclasses the Court deems appropriate, and finding that Plaintiff is a proper representative of the Classes;

B.     Actual damages and/or an award equal to the amount by which the Defendants have been unjustly enriched;

C.     An order requiring medical monitoring and smoking cessation programs;

D.     An order awarding interest;

E.     The costs of this proceeding and attorneys' fees;

F.     Any further compensatory, injunctive, equitable or declaratory relief as may be just and proper.

JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  March 14, 2016          Respectfully submitted,

By:_____

Steven W. Teppler (DC Bar No. 445259)
*E-mail: steppler@abbottlawpa.com*
Madison L. Kvamme (FL Bar No.104768)*
*E-mail: mk@abbottlawpa.com*
**ABBOTT LAW GROUP, P.A.**
2929 Plummer Cove Road
Jacksonville, FL 32223
Ph: (904) 292-1111 / Fax: (904) 292-1220

John A. Yanchunis (Florida Bar No. 324681)*
Scott W. Weinstein (Florida Bar No. 563080)*
Marisa K. Glassman (Florida Bar No. 0111991)*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
sweinstein@forthepeople.com

Keith R. Mitnik (Florida Bar No. 436127)*
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 849-2383
Facsimile: (407) 245-3381
kmitnik@forthepeople.com

Gregory D. Prysock (Florida Bar No. 62420)*
**MORGAN & MORGAN, P.A.**
76 South Laura Street, Suite 1100
Jacksonville, FL 32202
Telephone: (904) 398-2722
Facsimile: (904) 398-2334
gprysock@forthepeople.com

*Pro Hac Vice* Applications to be submitted

*Attorneys for Plaintiffs and Putative Class*